**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| DERRILL PRITCHETT, | **ELECTRONICALLY FILED** |
| *Plaintiff,* | Case No.  2:23-cv-1391 |
| vs. | |
| HOUSING AUTHORITY OF THE CITY OF PITTSBURGH, | |
| *Defendant.* | **JURY TRIAL DEMANDED** |

## COMPLAINT IN CIVIL ACTION

Plaintiff, Derrill Pritchett, by and through the undersigned counsel, now files the within Complaint in Civil Action against Defendant, Housing Authority of the City of Pittsburgh, averring as follows:

## PARTIES

1.     Plaintiff, Derrill Pritchett (hereinafter, "Plaintiff" and/or "Mr. Pritchett") is an adult individual who resides at 1421 Boyle Street, Pittsburgh, Pennsylvania 15212.

2.     Defendant, Housing Authority of the City of Pittsburgh (hereinafter, "Defendant" and/or "HACP"), is a municipal corporation, formed under the United States Housing Act of 1937, charged with providing housing for low-income persons.  Defendant is headquartered at 200 Ross Street, Pittsburgh PA 15219.

## JURISDICTION AND VENUE

3.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings this lawsuit asserting that Defendant violated Plaintiff's rights protected by Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (hereinafter, "Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* (hereinafter, the "ADEA"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 (hereinafter, "Section 1981"), and the related statutes which shielded Plaintiff from retaliatory adverse employment actions for asserting said rights, were flagrantly violated by Defendant.

4.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiff alleges violations of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* (hereinafter, the "PHRA").  Ultimately, as explained more thoroughly below, the factual basis for such claims is so related to the Title VII and/or Section 1981 claims that they form part of the same case or controversy under Article III of the United States Constitution.[1]

5.    Venue is also proper in this Court because Plaintiff is a resident and citizen of Pennsylvania and a substantial part of the events or omissions giving rise to the claims averred herein occurred in Allegheny County, which is located within the geographical confines of the United States District Court for the Western District of Pennsylvania.  Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

6.    This Court has personal jurisdiction over Defendant because Defendant routinely and regularly conducts business in the Commonwealth of Pennsylvania and routinely and regularly solicits business in Pennsylvania.  Further, as averred more fully below, Defendant violated numerous statutory provisions of federal and state law, and the underlying events giving rise to its unlawful conduct, including the harm that Plaintiff sustained therefrom, occurred in Pennsylvania.

---

[1] Notably, Pennsylvania state courts interpret the applicable provisions of the PHRA in accord with their counterpart provisions in Title VII.  See *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996); *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 138 (E.D. Pa. 2020).

As such, this Court, at bare minimum, may exercise personal jurisdiction over Defendant because it has the required minimum contacts with this forum for purposes of Pennsylvania's long-arm statute and the Due Process Clause of the United States Constitution.

7. This Court may therefore properly maintain personal jurisdiction over Defendant in light of its extensive conduct within Pennsylvania and this judicial district in particular, and the exercise of personal jurisdiction complies with traditional notions of fair play and substantial justice.

8. Further, Plaintiff has satisfied all procedural and administrative requirements set forth in 29 U.S.C. § 626, 42 U.S.C. § 2000e-5, and/or 43 P.S. § 959 in that:

    a. On or about December 14, 2022, Plaintiff dual filed a timely administrative complaint and charge of discrimination with the EEOC, alleging that Defendant violated Title VII and the ADEA. The EEOC was the lead investigative agency and the charge was dual-filed with the PHRC who took no action.

    b. On or about May 9, 2023, Plaintiff received permission for the right to sue from the EEOC, wherein Plaintiff was afforded ninety (90) days within which to timely file an action in federal or state court. With the filing of the instant Complaint, Plaintiff has hereby satisfied that procedural requirement.

    c. On or about May 9, 2023, Plaintiff exhausted his collective bargaining remedies.

## GENERAL ALLEGATIONS

9. Plaintiff is an African American male who, at all times relevant hereto, was over the age of seventy (70) years old.

10. Plaintiff began working for Defendant in October of 1997 in a laborer capacity. As a laborer, Plaintiff's workplace duties included but were not limited to, indoor and outdoor cleaning, landscaping, and snow and garbage removal.

11.     In 1999, Plaintiff became a member of the Pittsburgh Building & Construction Trades Council – Local 373.

12.     For salient contextual background, beginning in 1999, Plaintiff was subjected to a wide range of discriminatory workplace practices on the basis of his race and further witnessed the discriminatory workplace practices his similarly situated African American colleagues were subjected to.  As such, Plaintiff began complaining on behalf of himself and other Black laborers about race discrimination suffered in the course of their employment.

13.     Specifically, and as a direct result of the discriminatory workplace practices, Plaintiff filed numerous charges of race discrimination against Defendant with local, state, and federal agencies and two (2) lawsuits in the United States District Court for the Western District of Pennsylvania (hereinafter, collectively, the "Complaints").  See *Rainey, et al. v. Housing Authority for the City of Pittsburgh,* 2:02-cv-1306 (2002) and *Derrill Pritchett v. Housing Authority*, 2:10-cv-1356 (2010).

14.     Although the lawsuits were resolved, Defendant developed an adversarial and aggressive approach towards interacting with Plaintiff over the years as a result of Plaintiff's assertion of his rights pursuant to state and federal anti-discrimination statutes.

15.     In or around 2014, Plaintiff was assigned to work at Defendant's facility located in Northview Heights, Pennsylvania (hereinafter, the "Facility"), where he remained up to his wrongful termination in 2022.

16.     In or around 2018, Plaintiff's work conditions became intolerable, and he filed a new charge of race discrimination and retaliation with the EEOC at Case No. 533-2018-365.  The charge was investigated, but it was not prosecuted beyond the EEOC administrative process.

17.    In or around the summer of 2020, Defendant escalated its retaliatory harassment directed towards Plaintiff.

18.    On or about June 3, 2020, a Caucasian Real Estate Asset Manager for Defendant, Anthony Ceoffe (hereinafter, "Mr. Ceoffe") and African American Supervisor for Defendant, Tameka Chaffin (hereinafter, "Ms. Chaffin") falsely accused Plaintiff of intentionally not cleaning his assigned outdoor areas and threatened his job and told him he needed to "retire."

19.    Plaintiff responded to the above-referenced by reminding the two (2) that a few months earlier, Defendant's Director of Maintenance, Caster Binion, (hereinafter, "Mr. Binion") directly told Plaintiff not to clean the area in dispute for safety reasons.

20.    Ms. Chaffin admitted her frustration with Plaintiff and told him that she was "tired of [him]" and "You do what I tell you to do."

21.    Ms. Chaffin and Mr. Ceoffe continued to instruct Plaintiff to work beyond his duties and refused to provide Plaintiff without support or other organizational resources to permit Plaintiff to efficiently complete these duties.

22.    Plaintiff filed a new charge with the EEOC in October of 2021, alleging that Ms. Chaffin and Mr. Ceoffe were retaliating against him and discriminating against him because of his race and gender.  *See* Charge No. 533-2021-117.

23.    Plaintiff received a retaliatory negative performance review from Ms. Chaffin soon after Defendant received Charge No. 533-2021-117. Ms. Chaffin admitted to Plaintiff that she knew he filed a charge against her.

24.    On or about January 23, 2021, Ms. Chaffin denied Plaintiff's request for overtime and told him over the telephone that he was "too old anyway."

25.     As a result of continuing discrimination and retaliation from Ms. Chaffin and Mr. Ceoffe, Plaintiff filed another charge of discrimination reflective of the clear age and race discrimination with the EEOC on or about March 25, 2021, *See* Charge No. 533-2021-1020.

26.     Within a short proximity of time after filing this charge, Ms. Chaffin, Mr. Ceoffe and their supervisor, Defendant's Employee Relations Manager, Brandon Wiles (hereinafter, "Mr. Wiles") retaliated against Plaintiff.

27.     Ms. Chaffin and Mr. Ceoffe continued to order Plaintiff to work beyond his duties, alone and without support, such as performing snow removal by himself while Caucasian laborers were paired with other laborers for similar work.

28.     On or about April 9, 2021, Ms. Chaffin ordered Plaintiff to perform the work of four (4) laborers, who had called off sick, by himself or face discipline.

29.     On or about May 4, 2021, Mr. Wiles served Plaintiff with a written warning for a violation of "Defendant Employee Handbook Section 10, Unsatisfactory Performance or Conduct, Insubordination" for allegedly not cleaning his assigned areas to Ms. Chaffin's satisfaction and for complaining about discriminatory work conditions.

30.     The above-cited reason offered in support of the warning is a pretext for retaliation because Ms. Chaffin continued to order Plaintiff to clean areas beyond the scope of his duties by himself.

31.     On or about May 10, 2021, The EEOC issued a neutral Dismissal and Notice of Rights letter relative to Charge No. 533-2021-0017, which Plaintiff did not prosecute further.

32.     On or about May 12, 2021, an African American, Defendant's Assistant Site Manager, Lauren O. Hefflin (hereinafter "Ms. Hefflin"), informed Plaintiff that she was resigning

6

due to "bullying, lies, vindictiveness and harassment" that she received from Mr. Ceoffe and provided him with a copy of her resignation letter.

33.     Ms. Hefflin has also shared that she witnessed Mr. Ceoffe treat other African American laborers less favorably than similarly situated Caucasian laborers with regard to harassment and discipline.

34.     Ms. Hefflin further relayed to Plaintiff that she had witnessed Mr. Ceoffe harass and instruct older African American laborers, Richard Samuels (hereinafter, "Mr. Samuels") and Eugene Wallace (hereinafter, "Mr. Wallace"), from Arlington, Pittsburgh, and Charles Porter (hereinafter, "Mr. Porter"), from Northview Heights, Pittsburgh, to work beyond the scope of their duties just as Mr. Ceoffe had forced Plaintiff to do.

35.     Mr. Samuels, Mr. Wallace, Mr. Porter, and Mr. Pritchett are no longer employed by Defendant.

36.     On or about June 9, 2021, Ms. Chaffin continued to harass Plaintiff by saying, "Damn! You're older than my grandmother."

37.     On or about July 7, 2021, Ms. Chaffin again told Plaintiff that he could not work overtime because he was "too old for the job."

38.     During the summer of 2021, Yauna Morton (hereinafter "Ms. Morton") began supervising Plaintiff.

39.     In or around July of 2021, Plaintiff voluntarily stayed after his scheduled work hours in order to assist Ms. Morton with a sewage issue.  Ms. Morton unnecessarily became upset with Plaintiff and called Ms. Chaffin.  Ms. Chaffin then threatened Plaintiff's employment and told him specifically, "I don't care about that lawsuit," referring to Charge No. 533-2021-2021.

40.     On or about July 13, 2021, Ms. Morton approached Plaintiff during his 10:00 a.m. break and falsely accused him of not completing his cleaning work, again referring to work outside his assigned duties.

41.     Ms. Morton admitted to Plaintiff that Ms. Chaffin told her to, "Keep an eye on Pritchett." This sentiment was in clear reference to Plaintiff asserting his workplace rights to be free of discrimination and his prior engagement in protected activities. At the conclusion of this conversation, Ms. Morton threatened to write up Plaintiff for insubordination, but she did not.

42.     On or about July 15, 2021, Ms. Chaffin and Mr. Wiles surprised Plaintiff in a gym at Northview Heights. At the outset of the conversation, Mr. Wiles told Plaintiff, "This is just between us – it won't go no further." Mr. Wiles and Ms. Chaffin then told Plaintiff that he did not need his union representative and said, "We are concerned about your health. We got a report you are urinating your pants."

43.     Plaintiff vehemently denied any such incident and demonstrated the lack of evidence supporting such a flagrantly false, let alone highly inappropriate, assertion.

44.     Ms. Chaffin also told Plaintiff that she was afraid he would fall off the EVAC, a four-wheel vacuum vehicle.

45.     Mr. Wiles told Plaintiff that he was, "going to investigate" whether Plaintiff was "urinating on purpose" and subsequently threatened the continuation of Plaintiff's employment.

46.     Mr. Wiles never followed up with Plaintiff about the notably false accusations raised above.

47.     On or about March 10, 2022, Mr. Wiles, Mr. Ceoffe and Ms. Chaffin called Plaintiff and asked him about his physical therapy. Mr. Wiles asked, in an unwelcome and harassing

fashion, "You thinking about retiring because you're old enough."  Plaintiff responded and stated he was not contemplating retirement.

48.    In early 2022, coworkers also began to make unwelcome comments to Plaintiff about his age and retiring such as, "You are too old to be working here. You should retire."  These comments persisted on a weekly basis and within the purview of various Defendant managers. Defendant refused to remediate the increasingly hostile and offensive environment it now fostered concerning Plaintiff's age.

49.    In January of 2022, Defendant provided Plaintiff and other laborers with a holiday schedule for the year.

50.    During the Spring and Summer of 2022, Ms. Chaffin periodically met with approximately eleven (11) laborers during the morning meeting at 8:30 a.m.

51.    During these meetings, Ms. Chaffin told Plaintiff and the other laborers to empty the trash compactor at the Facility (hereinafter, the "Facility Compactor") on the weekend preceding a holiday that falls on a Monday, which would be a day off.

52.    Ms. Chaffin told the laborers to work it out amongst themselves to decide who would work the weekend day preceding the holiday in order to tend to the Facility Compactor.

53.    Laborers, Plaintiff, Ottis Lasley (hereinafter, "Mr. Lasley"), Tyler Zeher (hereinafter, "Mr. Lasley") and Raymar McComb (hereinafter, "Mr. McComb") agreed to rotate the holiday weekends.

54.    Contextually, Messrs. Lasley and McComb are African American and younger than Plaintiff.  Mr. Zeher is Caucasian and younger than Plaintiff.

55.    The Facility Compactor required maintenance, and specifically efforts to empty its contents, approximately twice per week, typically Mondays and Thursdays wherein no subsequent

weekday is a holiday.  Furthermore, when a holiday falls on a Monday, the workplace custom and practice was that the Facility Compactor is emptied on the preceding weekend.

56.     Mr. Zeher emptied the Facility Compactor on Saturday, May 28, 2022, and Sunday May 29 2022, because Memorial Day fell on Monday, May 30, 2022.

57.     Mr. Lasley emptied the Facility Compactor on Saturday July 2, 2022, because July 4, 2022, fell on a Monday.

58.     On Thursday, September 1, 2022, Mr. Lasley, Mr. Zeher and Plaintiff agreed that Plaintiff would empty the Facility Compactor on Saturday September 3, 2022, because Labor Day fell on Monday September 5, 2022.

59.     On Saturday, September 3, 2022, Plaintiff arrived at the Facility at 5:59 a.m. and clocked in.  Plaintiff planned on emptying the Facility Compactor and working until 8:00 a.m.

60.     For reference, it was the workplace practice and custom for Defendant employees to be compensated at a premium overtime rate of pay for emptying the Facility Compactor and working on a Saturday.

61.     After arriving at the high rise, Plaintiff accidentally locked himself out of the Facility break room due to the door to the break room malfunctioning.

62.     The break room door had a history of unexpectedly locking out HACP employees and those employees had a history of prying it open.

63.     Plaintiff emptied the Facility Compactor and completed the work and then notified security guard, Dave Smith (hereinafter, "Mr. Smith") that he needed access to the Facility break room to recover his keys.

64.     Mr. Smith, on his own accord, first tried to open the door with his knife and then Plaintiff, with Mr. Smith's permission, opened the door with a tire iron from the garage.

65.    Plaintiff retrieved his keys and filled out a report with Mr. Smith concerning the Lock Out.

66.    Plaintiff did not permanently damage the break room door but rather left it in a condition where it only required a quick reassembly.

67.    Subsequent to the foregoing events, Plaintiff worked September 6, 7 and 8, 2022.

68.    On September 8, 2022, Ms. Chaffin, Mr. Ceoffe, Mr. Wiles and union representative, Adam Mastrandrea (hereinafter, "Mr. Mastrandrea"), met with Plaintiff.

69.    Ms. Chaffin and Mr. Wiles accused Plaintiff of working on Saturday – without permission – what they referred to as "stealing time" and informed Plaintiff that he was terminated. Neither Ms. Chaffin nor Mr. Wiles offered the opening of the break room door as a reason in support of discharge.

70.    The offered substantiation in support of discharge was a pretext for discrimination and retaliation.  As such, Plaintiff reminded Ms. Chaffin and Mr. Wiles that Ms. Chaffin instructed laborers to clean the Facility Compactor on the weekend before a holiday and that he and the other laborers shared the responsibility.

71.    Plaintiff also reminded Ms. Chaffin and Mr. Wiles that he had emptied the Facility Compactor for the last five (5) years to the approval and acceptance of Defendant.

72.    After receiving Plaintiff's explanation about why he worked Saturday, Mr. Chaffin and Mr. Wiles abruptly changed their reason in support of the termination to alleging that Plaintiff broke a door at the Facility.  At all times relevant hereto, Plaintiff did not break a door but pried open the already broken door only after seeking approval from Mr. Smith.

73.    Thereafter, Mr. Wiles provided Plaintiff with a contact report that Plaintiff disagreed with but acknowledged receipt of.

74. The subsequent reason in support of discharge is also a pretext for discrimination and retaliation because Plaintiff followed the direction of the person in charge, Mr. Smith.

75. Subsequent to the foregoing events, Plaintiff filed a grievance, but Mr. Wiles refused to change his determination.

76. Mr. Wiles then offered Plaintiff the choice of resigning and retaining some benefits or to be terminated and lose all his benefits.

77. Plaintiff refused to resign because he valued his job, performed well for over twenty (20) years, and did not violate any policy and/or directive.

78. Plaintiff was the oldest and most senior laborer when Defendant terminated his employment.

79. Ultimately, Defendant terminated Plaintiff pretextually and on the basis of his race in violation of Title VII and the PHRA.

80. Defendant also retaliated against Plaintiff, by assigning him difficult or impossible tasks, and threatening him with discipline and discharge, because he filed multiple Complaints of race discrimination, as well as verbally complained to supervisors named in the Complaints about race discrimination, in violation of Title VII and the PHRA.

81. Moreover, and alternatively, Defendant terminated Plaintiff pretextually and on the basis of his age in violation of the ADEA and the PHRA.

82. Additionally, Defendant retaliated against Plaintiff, by assigning him difficult or impossible tasks, and threatening him with discipline and discharge, because he filed multiple charges of age discrimination with the EEOC (hereinafter, collectively the "Charges"), as well as verbally complained to supervisors named in the charges about age discrimination, in violation of the ADEA and the PHRA.

12

**COUNT I**
**DISCRIMINATION ON THE BASIS OF AGE**
**IN VIOLATION OF THE ADEA AND THE PHRA**
**29 U.S.C. § 621, *et seq.* and 43 P.S. § 951, *et seq.***

83.     Plaintiff incorporates the allegations contained in the paragraphs set forth above, as if fully set forth at length herein.

84.     "In order to establish a *prima facie* case of age discrimination, a plaintiff is required to establish that: (1) he was a member of a protected class (i.e., that he was at least 40 years old during the relevant period); (2) he was qualified for the position at issue; (3) he suffered an adverse employment action; and (4) he was treated differently than a sufficiently younger and similarly situated person, raising an inference of age discrimination." *Johnson v. McGraw-Hill Companies*, 451 F. Supp.2d 681, 694 (W.D. Pa. 2006), quoting *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 249 (3d Cir. 2002).

85.     Plaintiff was approximately seventy (70) years when the events giving rise to the instant action occurred.

86.     Plaintiff was qualified to perform the tasks and job duties as a "laborer", as evidenced by the fact that Plaintiff had a proven track record and history with Defendant going back to October of 1997.

87.     Plaintiff suffered a pattern and practice of derogatory comments as partially pled above due to his age.

88.     Plaintiff suffered the most severe adverse employment action wherein Defendant terminated Plaintiff.  At the time of termination, Plaintiff was the oldest and most senior laborer employed with Defendant.

89.     But for Plaintiff's age, Defendant would not have made derogatory comments to Plaintiff encouraging him to retire and terminate his employment.

13

90.    Accordingly, Defendant devised, implemented, and effectuated a pattern and practice of age discrimination in violation of the ADEA.

91.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

92.    Moreover, when an employer has "willfully" violated the ADEA, the employee is entitled to liquidated damages equal to the amount of the lost backpay.  *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 114 (1985) A violation is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Id.* at 128-29.

93.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

### COUNT II
### UNLAWFUL RETALIATION ON THE BASIS
### OF ENGAGING IN A PROTECTED ACTIVITY
### IN VIOLATION OF THE ADEA AND THE PHRA
### 29 U.S.C. § 621, *et seq.* and 43 P.S. § 951, *et seq.*

94.     Plaintiff incorporates the allegations contained in the paragraphs set forth above, as if fully set forth at length herein.

95.     To advance a *prima facie* case of retaliation for engaging in a protected activity under the ADEA, a plaintiff is required to show "(1) [that he engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Marra v. Phila. Hous. Auth.,* 497 F.3d 286, 300 (3d Cir.2007) (quoting *Fogleman v. Mercy Hosp. Inc.,* 283 F.3d 561, 567–68 (3d Cir.2002)).

96.     Plaintiff engaged in protected activity when he verbally complained to supervisors about discrimination, filed grievances and filed the previous Charges as delineated herein.

97.     Plaintiff suffered the ultimate adverse employment action when Defendant terminated him.

98.     Subsequent to Plaintiff's filing of the previous Charges set forth herein, Defendant developed an adversarial and aggressive approach towards Plaintiff over the years as a result of same which culminated into Defendant's wrongful termination of Plaintiff.

99.     As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT III
## INTENTIONAL RACIAL DISCRIMINATION

## IN VIOLATION OF TITLE VII AND/OR THE PHRA
### 42 U.S.C. § 2000e, *et seq.* and 43 P.S. § 951, *et seq.*

100.     Plaintiff incorporates the allegations contained in the paragraphs set forth above, as if fully set forth at length herein.

101.     "In order to establish a *prima facie* case of intentional racial discrimination, an employee must show that: (1) he is a member of a protected group; (2) he was qualified for the position at issue; (3) he was discharged or suffered some adverse employment action by the employer; and (4) he was treated less favorably than other similarly situated employees outside the protected group." *In re Tribune Media Co.*, 902 F.3d 384, 402 (3d Cir. 2018) (internal citations and alterations omitted).

102.     At all times relevant hereto, Plaintiff was a member of a protected group insofar as Plaintiff is an African American female.

103.     Plaintiff was qualified to perform the tasks and job duties as a "laborer", as evidenced by the fact that Plaintiff had a proven track record and history with Defendant going back to October of 1997.

104.     Plaintiff was discharged by Defendant on the basis of his race.

105.     Further, Defendant treated Plaintiff's similarly situated Caucasian coworkers more favorably in that said coworkers were permitted the advantage of being paired together for work duties such as snow removal.

106.     Moreover, Plaintiff's similarly situated Caucasian coworkers who worked at the Facility were not accused of "stealing time" and were not terminated.

107.     As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment

16

and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

<u>COUNT IV</u>
**UNLAWFUL RETALIATION ON THE BASIS OF RACE
IN VIOLATION OF TITLE VII AND THE PHRA
42 U.S.C. §2000e, *et seq.* and 43 P.S. § 951, *et seq.***

108.     Plaintiff incorporates the allegations contained in the paragraphs set forth above, as if fully set forth at length herein.

109.     To establish a claim for retaliation on the basis of race, a Plaintiff must show "(1) [that he engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Marra v. Phila. Hous. Auth.,* 497 F.3d 286, 300 (3d Cir.2007) (quoting *Fogleman v. Mercy Hosp. Inc.,* 283 F.3d 561, 567–68 (3d Cir.2002)).

110.     Plaintiff engaged in protected activity when he verbally complained to supervisors about discrimination, filed grievances and filed the previous Charges as delineated herein.

111.     Plaintiff suffered the ultimate adverse employment action when Defendant terminated him.

112.     Subsequent to Plaintiff's filing of the previous Charges set forth herein, Defendant developed an adversarial and aggressive approach towards Plaintiff over the years as a result of same which culminated in Defendant's wrongful termination of Plaintiff.

113.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT V**
**INTENTIONAL RACIAL DISCRIMINATION**
**IN VIOLATION OF SECTION 1981**
**42 U.S.C. § 1981**

114.    Plaintiff incorporates the allegations contained in the paragraphs set forth above, as if fully set forth at length herein.

115.    In relevant part, Section 1981 grants "[a]ll persons. . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).

116.    It is now well settled that Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts.  See, e.g., *Johnson v. Railway Express Agency*, 421 U.S. 454, 459-460 (1975).  Further, Section 1981 clarifies that the term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts*,* and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

117.    Notably, the standards for a Section 1981 hostile work environment claim are identical to those set forth in the framework governing Title VII hostile work environment.  See, e.g., *Verdin v. Weeks Marine Inc.*, 124 Fed. Appx. 92, 95 (3d Cir. 2005); *Ocasio v. Lehigh Valley Family Health Center*, 92 Fed. Appx. 876, 879-80 (3d Cir. 2004).

118.   As such, to state a *prima facie* case for a harassment claim under Section 1981 that alleges a hostile work environment on the basis of race, a plaintiff must show that (1) the employee suffered intentional discrimination because of his race, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability.  *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017).

119.   To restate, Plaintiff is an African American individual and, as such, possesses the physical attributes and characteristics that are commonly associated with such racial classification.

120.   Further, as evidenced by the numerous legal actions Plaintiff brought against Defendant on the basis of race as set forth herein clearly establishes a pattern and practice of pervasive racial discrimination.

121.   Additionally, Plaintiff was treated inequitably as compared to his similarly situated Caucasian peers in that Defendant continually ordered Plaintiff to work beyond his duties, alone and without support, while his similarly situated Caucasian coworkers were paired with other laborers for similar work.

122.   Any reasonable person standing in the shoes of Plaintiff would have experienced such a detrimental impact.

123.   Therefore, Defendant violated Section 1981 in creating, sustaining, and failing to rectify a racially hostile work environment.

124.   Plaintiff suffered the ultimate adverse employment action when he was terminated for stealing time because of his race while acting in a comparable manner to his Caucasian coworkers who were not so similarly disciplined.

125.     As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

### COUNT VI
### INTENTIONAL RACIAL DISCRIMINATION (RETALIATION)
### IN VIOLATION OF SECTION 1981
### 42 U.S.C. § 1981

126.     Plaintiff incorporates the allegations contained in the paragraphs set forth above, as if fully set forth at length herein.

127.     To state a *prima facie* claim for retaliation in violation of Section 1981, a plaintiff must establish the following: (1) he engaged in protected activity; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action.  *Castleberry v. STI Group*, 863 F.3d 259, 267 (3d Cir. 2017).

128.     As averred hereinabove, Plaintiff previously verbally complained and filed Grievances and Complaints on the basis of racial discrimination as set forth herein and thereby engaged in conduct that is expressly protected by Section 1981.

129.     Plaintiff suffered retaliation in the form of continued harassment and criticisms.

130.     Plaintiff suffered the ultimate adverse employment action wherein Defendant terminated him.

20

131.     Ultimately, given the remarkably close temporal proximity that exists between the time when Plaintiff filed the most recent Charge of Discrimination on the basis of race, March 25, 2021, to the time Defendant terminated Plaintiff, September 8, 2022, an irrebuttable inference is established that Defendant terminated Plaintiff because—and only because—he engaged in protected activity for purposes of Section 1981.

132.     Consequently, Defendant flouted Section 1981 in retaliatorily discharging Plaintiff because he officially protested the existence of a racially hostile work environment.

133.     As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## **PRAYER FOR RELIEF**

Plaintiff, Derrill Pritchett, respectfully requests this Honorable Court to enter judgment in his favor, and against Defendants, Housing Authority of the City of Pittsburgh, and prays for relief as follows:

1.   Declare and find that Defendant committed one or more of the following acts:

    i.     Violated the ADEA and the PHRA by engaging in discrimination on the basis of age;

    ii.    Violated the ADEA and the PHRA in retaliating against Plaintiff for engaging in protected activity;

     iii.    Violated Title VII and the PHRA by engaging in discrimination on the basis of age;

     iv.    Violated Title VII and the PHRA in retaliating against Plaintiff for engaging in protected activity;

     v.    Violated Section 1981 by intentionally discriminating against Plaintiff because of his race;

     vi.    Violated Section 1981 in retaliating against Plaintiff for protesting a racially hostile work environment.

2. Award compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life;

3. Award equitable relief in the form of back pay and front pay;

4. Award punitive damages sufficient to deter MC Discount from engaging in future conduct of a similar nature;

5. Award injunctive and other equitable relief as provided by law;

6. Award reasonable attorney's fees and costs;

7. Award pre-judgment and continuing interest as calculated by the Court;

8. Grant leave to amend to add claims under state and federal laws; and/or

9. Award such other and further relief as this Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: August 03, 2023              By: _/s/ Erik M. Yurkovich_____
                                   Erik M. Yurkovich (Pa. I.D. No. 83432)
                                   Kyle H. Steenland (Pa. I.D. No. 327786)

                                   The Workers' Rights Law Group, LLP
                                   Foster Plaza 10
                                   680 Andersen Drive, Suite 230
                                   Pittsburgh, PA 15220
                                   Telephone: 412.910.9592
                                   Fax: 412.910.7510
                                   kyle@workersrightslawgroup.com

                                   *Counsel for Plaintiff, Derrill Pritchett*

**VERIFICATION**

I, Derrill Pritchett, have read the foregoing allegations in the foregoing Complaint in Civil Action and verify that the statements therein are correct to the best of my personal knowledge, information and/or belief.  I understand that this verification is made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.

Dated: 8/2/2023

Derrill Pritchett